# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

**People v. Fitzpatrick, 2013 IL 113449**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LEWIS C. FITZPATRICK, Appellant. |
| Docket No. | 113449 |
| Filed | April 4, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A motion to suppress was properly denied where drugs were found on the person of a defendant after he was arrested for a petty offense and brought to the police station, but where he neither demonstrated any long-standing Illinois tradition requiring suppression nor any other exception to the doctrine that the search and seizure clause of the Illinois Constitution is construed the same as that of the Constitution of the United States. |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. George Bridges, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Barbara R. Paschen, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellant. |
| | |
| | Lisa Madigan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Michael A. Scodro, Solicitor General, and Michael M. Glick and Drew Meyer, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| | |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1      At issue is whether the circuit court of Lake County erred in denying defendant's motion to suppress evidence, where the evidence was obtained pursuant to a search incident to an arrest for a petty offense. We hold that the trial court did not err, because defendant did not meet his burden of showing that the arrest violated his rights under the search and seizure clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 6).

¶ 2                                   BACKGROUND

¶ 3      The State charged defendant, Lewis C. Fitzpatrick, with possessing fewer than 15 grams of cocaine. Defendant moved to suppress the evidence that was discovered during a search of his person after he was arrested for a petty offense. Defendant alleged that subjecting him to an arrest for a petty offense violated his rights under the fourth amendment and the search and seizure clause of our state constitution.

¶ 4      At the hearing on the motion to suppress, Officer Paul Kehrli of the Zion police department testified that in July 2009, he observed defendant and a companion walking down the middle of 28th Street. Walking in the middle of the street is a violation of section 11-1007 of the Illinois Vehicle Code (625 ILCS 5/11-1007 (West 2010)), and it is classified as a petty offense (625 ILCS 5/11-202 (West 2010)). Kehrli also testified that defendant's conduct violated a municipal ordinance. Kehrli testified that he had no specific belief that defendant was armed, and defendant was not doing anything threatening at the time. Kehrli conducted a brief pat-down search for weapons and then placed defendant under arrest. As part of routine procedure when someone is placed under arrest, defendant was searched for contraband at the police station. The police discovered cocaine in defendant's sock.

¶ 5      The trial court denied the motion to suppress. The court found that *People v. Taylor*, 388

Ill. App. 3d 169 (2009), is the controlling law in the Second District. In *Taylor*, the court held that, pursuant to *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), an arrest for a minor fine-only offense does not violate the fourth amendment. And, because this court has construed the search and seizure clause of the Illinois Constitution in limited lockstep with the fourth amendment (*People v. Caballes*, 221 Ill. 2d 282 (2006)), such an arrest does not violate the Illinois Constitution either. *Taylor*, 388 Ill. App. 3d at 176.

¶ 6        Defendant appealed, and the Appellate Court, Second District, affirmed. 2011 IL App (2d) 100463. That court acknowledged that it had, in an earlier decision, held that this court had implicitly rejected *Atwater*. *Id.* ¶ 4 (discussing *People v. Moorman*, 369 Ill. App. 3d 187 (2006)). However, the Second District later disavowed *Moorman* in *Taylor* and concluded that this court had *not* implicitly rejected *Atwater*. See *Taylor*, 388 Ill. App. 3d at 176-78. In the present case, the Second District continued to follow *Taylor*. The court explained that Illinois follows a "limited lockstep" approach and that none of the narrow exceptions for departing from lockstep were present in this case. 2011 IL App (2d) 100463, ¶¶ 8-12. Accordingly, the court upheld the denial of the motion to suppress.

¶ 7        The court agreed with defendant that he should have been granted a hearing on his ability to pay a public defender fee before such a fee was imposed, and the court remanded for such a hearing. The court rejected defendant's argument that such a remand was improper because more than 90 days had passed since the entry of final judgment. *Id.* ¶ 13.

¶ 8        We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 9                                ANALYSIS

¶ 10        Defendant raises two issues on appeal: (1) that his motion to suppress should have been granted because the search and seizure clause of the Illinois Constitution provides greater protection than its federal counterpart; and (2) that the appellate court erred in remanding the cause for a hearing on defendant's ability to pay a public defender fee, as more than 90 days had passed since the entry of final judgment.

¶ 11                            Motion to Suppress

¶ 12        Defendant's first argument is that the trial court erred in denying his motion to suppress because an arrest for a petty offense is unreasonable under the search and seizure clause of the Illinois Constitution. Defendant concedes that the issue was settled for fourth amendment purposes by *Atwater*. However, defendant argues that this court should hold that our state constitution provides greater protection than the fourth amendment and prohibits full custodial arrests for petty offenses. Defendant acknowledges this court's limited lockstep doctrine set forth in *Caballes*, but argues that this situation falls within the exceptions set forth in *Caballes*. The State disagrees with defendant, and contends that none of the exceptions set forth in *Caballes* apply to this situation. This is solely a question of law, and thus our review proceeds *de novo*. *People v. Washington*, 2012 IL 110283, ¶ 19.

¶ 13        In *Atwater*, the defendant was arrested for failing to wear a seat belt. Under Texas law,

this was a misdemeanor offense, punishable by a fine of between $25 and $50. *Atwater*, 532 U.S. at 323-24. The police took the defendant to the police station in handcuffs, took her mug shot, and then booked her into jail. *Id.* at 324. The defendant brought a section1983 suit (42 U.S.C. § 1983), alleging that the police and the City of Lago Vista had violated her fourth amendment right to be free from unreasonable seizures. *Atwater*, 532 U.S. at 325.

¶ 14    The case reached the Supreme Court, where the Court held that the arrest did not violate the fourth amendment. The Court framed the question before it as whether the fourth amendment placed any restrictions on a police officer's authority to arrest without warrant for minor criminal offenses. *Id.* at 326. The Court ultimately concluded that, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id.* at 354.

¶ 15    In *Caballes*, this court held that it applies a "limited lockstep" approach to analyzing cognate provisions of the Illinois Constitution of 1970 and the United States Constitution. *Caballes*, 221 Ill. 2d at 309-10. Under this approach, we will construe our constitution as providing greater protection than its federal counterpart when the following criteria are met:

> " 'We must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned.' " *Id*. at 310 (quoting *People v. Tisler*, 103 Ill. 2d 226, 245 (1984)).

As this court noted in *Caballes*, this court has done this analysis for purposes of article I, section 6, of our state constitution, and determined that the framers intended for it to have the same scope as the fourth amendment. *Id*. at 296-97 (quoting *Tisler*, 103 Ill. 2d at 241-42). We reaffirmed our commitment to this approach in *Caballes* (*id*. at 313-14), so the lockstep question is generally settled for search and seizure purposes.

¶ 16    *Caballes* did note, however, that our limited lockstep approach would allow for consideration of "state tradition and values as reflected by long-standing state case precedent." *Id*. at 314. Thus, in *People v. Washington*, 171 Ill. 2d 475 (1996), we held that a freestanding claim of actual innocence based on newly discovered evidence could be raised in a postconviction proceeding, despite the holding in *Herrera v. Collins*, 506 U.S. 390 (1993), that such a claim was not cognizable as a violation of due process in a federal *habeas corpus* proceeding. We relied in part on this court's previous willingness to look to this state's historical approach to due process questions. *Id*. at 485-88. Similarly, in *People v. Krueger*, 175 Ill. 2d 60 (1996), this court held that it would not follow *Illinois v. Krull*, 480 U.S. 340 (1987), which recognized a good-faith exception to the exclusionary rule when a search was conducted pursuant to a statute later held unconstitutional. *Krueger* was based on this state's history of applying the exclusionary rule under the state constitution and also a long-standing state tradition of excluding evidence obtained under the authority of an unconstitutional statute. *Krueger*, 175 Ill. 2d at 74-75.

¶ 17    Defendant's argument is relatively narrow. He likens his case to *Krueger*, in which this court held that it would not follow the United States Supreme Court's decision in *Krull*.

Defendant maintains that just as there were in *Krueger*, there exist here long-standing state history and traditions that compel the rejection of *Atwater*. Indeed, according to defendant, adopting *Atwater*'s interpretation here would "as drastically change this state's constitutional law" as would have the adoption of *Krull* in *Krueger*.

¶ 18    The problem with defendant's argument, however, is that he has not provided this court with an example of a long-standing state history and traditions as strong as those that were identified in *Krueger*. Defendant contends, for example, that *Atwater* conflicts with this state's traditions concerning searches and seizures during traffic stops, as reflected in *People v. Watkins*, 19 Ill. 2d 11 (1960). There, the defendant sought to suppress evidence found after police arrested him for parking too close to the sidewalk. *Id.* The court noted that the police were justified in making the arrest because the offense was a misdemeanor and had been committed in police presence. *Id.* at 18. Notwithstanding that fact, the court went on to note that such an arrest, where a ticket can be also left on the door handle, would not support a search incident to arrest. *Id.* at 19. Nevertheless, the court found suppression unwarranted because the search was justified on other grounds. *Id.* at 19.

¶ 19    Defendant's argument today therefore focuses on that portion of *Watkins* in which the court noted, in passing, that the arrest would not support a search incident to arrest. He argues that the offense here is akin to the offense in *Watkins* and thus shows that Illinois historically has followed an analysis different from that in *Atwater*. Defendant's contention, however, overlooks the fact that two years after *Watkins* was issued, this court decided *People v. McDonald*, 26 Ill. 2d 325 (1962), in which an arrest for a fine-only offense and a search incident to that arrest were upheld as justified. Thus, since 1962, Illinois has consistently recognized that police are allowed to conduct a custodial search after an arrest for a traffic or petty offense. In fact, in *People v. Hoskins*, 101 Ill. 2d 209, 216 (1984), this court held that under both the federal and Illinois constitutions, it is "reasonable" for police to conduct a full search of a person after *any* lawful arrest. Rather than illustrate a long-standing tradition that custodial arrests and searches are unreasonable after an arrest for a petty or traffic offense, our case law, post-*Watkins*, reveals just the opposite. If anything, *Atwater* is consistent with the search and seizure case law in Illinois that predates it.

¶ 20    In support of his argument concerning Illinois' long-standing history and traditions, defendant also relies on section 107-12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107-12 (West 2010)), which provides as follows:

"§ 107-12. Notice to appear. (a) Whenever a peace officer is authorized to arrest a person without a warrant he may instead issue to such person a notice to appear.

(b) The notice shall:

(1) Be in writing;

(2) State the name of the person and his address, if known;

(3) Set forth the nature of the offense;

(4) Be signed by the officer issuing the notice; and

(5) Request the person to appear before a court at a certain time and place.

(c) Upon failure of the person to appear a summons or warrant of arrest may

issue.

> (d) In any case in which a person is arrested for a Class C misdemeanor or a petty offense and remanded to the sheriff other than pursuant to a court order, the sheriff may issue such person a notice to appear."

Defendant notes that this statute has been frequently interpreted as providing for the appearance in court of an arrestee without the necessity and inconvenience of an immediate arrest. See, *e.g.*, *People v. Warren*, 173 Ill. 2d 348, 357 (1996); *People v. Brausam*, 83 Ill. App. 2d 354, 358-59 (1967). The statute, however, only *allows* the police to issue a notice to appear in lieu of an arrest. It does not *require* it.[1] In fact, the statute even recognizes in subsection (d) that a person may be arrested for a petty offense.

¶ 21 The State notes that other statutes show that defendant's contentions regarding Illinois' long-standing history and traditions fall wide of the mark. For instance, section 107-2(1)(c) of the Code of Criminal Procedure of 1963 provides that a peace officer may arrest a person when he or she has "reasonable grounds to believe that the person is committing or has committed an offense." 725 ILCS 5/107-2(1)(c) (West 2010). And section 102-15 of the same code explains that " '[o]ffense' means a violation of any penal statute of this State." 725 ILCS 5/102-15 (West 2010); see also *People v. Edge*, 406 Ill. 490, 497 (1950) (construing predecessor statute to section 107-2(1)(c) as encompassing "all felonies, however great, and all misdemeanors, however slight"). Moreover, section 16-102(a) of the Illinois Vehicle Code provides that the State Police "shall patrol the public highways and make arrests for violation of the provisions of this Act." 625 ILCS 5/16-102(a) (West 2010). Thus, just as Illinois has no common law tradition of prohibiting arrests for minor offenses, there is no such statutory tradition either. In fact, any statutory tradition that Illinois has is to *allow* such arrests. Clearly, no grounds exist to depart from lockstep on this issue.

¶ 22 Defendant criticizes *Atwater*'s reasoning and contends that such reasoning has no place in Illinois search and seizure law. Defendant again contends, without citation, that adopting *Atwater*'s reasoning would "alter longstanding Illinois jurisprudence regarding unreasonable searches and seizures." But, as we have already set forth above, defendant has failed to identify anything in Illinois jurisprudence that is contradicted by *Atwater*'s reasoning. Indeed, as we set forth above, *Atwater* is consistent with both Illinois statutory and common law. Defendant insists that *Atwater* "conflicts with long-standing state tradition and values as reflected by long-standing Illinois case precedent," but he has failed to identify any such precedent and our research has disclosed none.

¶ 23 Defendant also argues that several other states have relied on their state constitutions in declining to follow *Atwater*. Again, this is not relevant for purposes of the limited lockstep analysis. As noted in *Caballes*, our state constitutional jurisprudence cannot be predicated on the actions of our sister states. *Caballes*, 221 Ill. 2d at 313; see also *People v. Clemons*,

---

[1]Even if the statute did require a notice to appear in lieu of an arrest, that would not change the fourth amendment analysis. The Supreme Court held in *Virginia v. Moore*, 553 U.S. 164 (2008), that the police do not violate the fourth amendment when they make an arrest that is supported by probable cause but is prohibited by state law.

2012 IL 107821, ¶ 32 ("This court's jurisprudence of Illinois constitutional law cannot be predicated on the actions of our sister states."). Instead, we look only to the intent of the drafters, the delegates, and the voters in adopting the Illinois Constitution of 1970. *Caballes*, 221 Ill. 2d at 313. This court chose the limited lockstep approach because it believed that this approach best reflected "our understanding of the intent of the framers of the Illinois Constitution of 1970." *Id.* What another state determines about its own constitution is not relevant to this question.

¶ 24   In light of the above, we are not persuaded by defendant's argument that long-standing state history and traditions conflict with the analysis in *Atwater*. For this reason, we will construe article I, section 6, of the Illinois Constitution of 1970 in the same manner as the fourth amendment. The circuit court therefore correctly denied defendant's motion to suppress.

¶ 25                                   Public Defender Fee

¶ 26   Defendant next argues that the appellate court erred in remanding the cause for a hearing on his ability to pay a public defender fee. Defendant contends that, because more than 90 days had passed since final judgment, it was too late to hold such a hearing. See 725 ILCS 5/113-3.1(a) (West 2010). We hold that defendant has forfeited this issue by failing to raise it in his petition for leave to appeal. Issues that a party fails to raise in its petition for leave to appeal, even if raised in the party's appellant's brief, are not properly before this court and are forfeited. *People v. McDonough*, 239 Ill. 2d 260, 276 (2010); *People v. Whitfield*, 228 Ill. 2d 502, 509 (2007). The only excuse that defendant offers for failing to raise the issue in his petition for leave to appeal is that, at the time the petition was prepared, the issue was already pending before this court in *People v. Gutierrez*, 2012 IL 111590. We fail to see what difference this makes. If defendant wanted to obtain relief on the issue, he still would have had to raise the issue himself, even if the issue was already pending before the court in another case. We see no reason to excuse defendant's forfeiture.

¶ 27                                     CONCLUSION

¶ 28   In *Atwater*, the Supreme Court held that an arrest for a minor, fine-only offense is not unreasonable under the fourth amendment. Under our limited lockstep doctrine, we construe the search and seizure clause of our state constitution the same way, unless any of the narrow exceptions to lockstep interpretation apply. Defendant has failed to demonstrate that those exceptions are present here, and thus we hold the trial court did not err in denying his motion to suppress.

¶ 29   The appellate court's judgment is affirmed.

¶ 30   Affirmed.