# Illinois Official Reports

## Supreme Court

*WISAM 1, Inc. v. Illinois Liquor Control Comm'n*, 2014 IL 116173

| | |
|---|---|
| Caption in Supreme Court: | WISAM 1, INC., d/b/a Sheridan Liquors, Appellant, v. ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Appellees. |
| Docket No. | 116173 |
| Filed | May 22, 2014 |
| Rehearing denied | September 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where municipal liquor licensees were barred from activity prohibited by federal law and a liquor store's license was revoked after its manager's conviction on federal money laundering charges, a claim of denial of due process was rejected where there was no challenge to the appropriateness of the penalty or the sufficiency of the evidence and where there had been a meaningful opportunity to be heard at every stage by presenting relevant evidence and defenses. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Michael E. Brandt, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Daniel G. O'Day, Daniel Hanuska, and Robert J. Hanauer, of Cusack, Gilfillan & O'Day, LLC, of Peoria, for appellant.

Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Liquor Control Commission.

Sonni Choi Williams, Interim Corporation Counsel, for appellees City of Peoria *et al.*

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion. Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises out of a decision by the Illinois Liquor Control Commission, which affirmed the decision of the deputy local liquor control commissioner of the City of Peoria (Local Commissioner) to revoke the liquor license of WISAM 1, Inc., doing business as Sheridan Liquors (Sheridan Liquors). The circuit court of Peoria County and the appellate court affirmed the decision on administrative review. 2013 IL App (3d) 110607-U. At issue is whether Sheridan Liquors was denied due process at the revocation proceeding before the Local Commissioner. For the following reasons, we hold that its due process rights were not violated and affirm the decision of the Commission.

¶ 2                              BACKGROUND

¶ 3    Since 2002, Sheridan Liquors operated a liquor store at 2415 North Sheridan Road in Peoria, Illinois, and held a valid liquor license issued by the City of Peoria (the City). Adnan Asad was the president and owner of the business. His brothers, Mohamed (Mike) and Jalal Asad, managed and operated the business.

¶ 4    In 2009, Mike and Jalal were indicted in federal court on five counts of violating or conspiring to violate the Money Laundering Control Act of 1986 (31 U.S.C. § 5324(a)(3) (2006)).[1] That Act requires a bank involved in a cash transaction exceeding $10,000 to file a report with the Secretary of the Treasury. 31 U.S.C. § 5313(a) (2006); 31 C.F.R. § 103.22(b) (2009). The purpose of this requirement is to ferret out criminal activity hidden through money laundering and other financial devices. *United States v. MacPherson*, 424 F.3d 183, 188 (2d Cir. 2005). The Act further makes it illegal to break up a single transaction above the reporting

---

[1] Jalal fled the country prior to trial and is currently a wanted fugitive. www.interpol.int/notice/search/wanted/2009-11204. His conduct is not at issue here.

threshold into two or more separate transactions for the purpose of evading the reporting requirement. 31 U.S.C. § 5324(a)(3) (2006); 31 C.F.R. § 103.11(gg) (2009).

¶ 5    The indictment alleged that Mike and Jalal were involved in the management and operation of Sheridan Liquors, and that as part of the business, in addition to selling liquor and other products, they cashed checks for a fee. As a result of the check-cashing operation, they needed a substantial amount of cash. The cash generated from the sale of liquor and other products was insufficient to provide the amounts needed to cover the checks that were being cashed. From June 2003 to March 2007, they withdrew large amounts of cash from Sheridan Liquors' bank account by writing checks payable to cash and, knowing of the federal reporting requirements, structured the withdrawal of more than $4 million from that account to evade the reporting requirements. For example, the indictment alleged that on the same date in 2006, two checks were written for $9,500 on Sheridan Liquors' account at different branch offices in Peoria. The next day, a $9,800 and a $9,000 check were cashed at these same branch offices. The next month, eight checks were cashed in separate transactions each in increments of $9,000, $9,500, and $9,800 at various branch offices.

¶ 6    In June 2010, a jury found Mike guilty on all five counts in the federal indictment. He was subsequently sentenced to three years in prison. He did not appeal.

¶ 7    One month later, the City of Peoria issued a notice of hearing to Sheridan Liquors charging a violation of section 3-28 of the Peoria Municipal Code (the Code). That section prohibits, in relevant part, any liquor licensee or its agent or employee from engaging in any activity or conduct in or about the licensed premises that is prohibited by federal law. Peoria Municipal Code § 3-28 (adopted Apr. 20, 1993). The City alleged that between 2003 and 2007, Mike, as Sheridan Liquors' agent or employee, engaged in illegal activity in or about the premises by conspiring to unlawfully structure financial transactions related to Sheridan Liquors' operations to evade the federal reporting requirements, as charged in the federal indictment.

¶ 8    On August 4, 2010, an administrative hearing was held before the Local Commissioner. At the outset of the hearing, the City entered into evidence a stipulation between the parties. The stipulation, which was read into the record, provided as follows:

"1. At all dates and time[s] as indicated in the notice of charge against the licensee, [Mike] Asad, was acting as a manager or employee or agent of the licensee.

2. The attached Exhibit A is an accurate and true copy of the indictment against [Mike] Asad in the federal criminal case 09-10110 before the U.S. Central District Court.

3. That [Mike] Asad was found guilty and convicted by a jury for committing federal criminal offenses, counts 1 through 5, as charged in [the] indictment contained in the federal criminal case 09-10110 before the U.S. Central District Court.

4. The federal criminal offenses of which [Mike] Asad was convicted all related to the financial and business operations of Sheridan Liquors located [at] 2415 N. Sheridan, Peoria, Illinois.

5. That as part of Sheridan Liquors' business, [Mike] Asad and other employees of Sheridan Liquor[s] cashed checks for its customers."

¶ 9    In addition to the stipulation and the attached indictment, the City introduced the three volume transcript from the federal criminal trial. Sheridan Liquors objected to the admission of the transcripts because the business and its owner, Adnan, were not parties to the criminal

proceeding against Mike and had no opportunity to defend in that proceeding or cross-examine those witnesses. The Local Commissioner admitted the evidence over objection.

¶ 10    After entering into evidence the stipulation, the attached indictment, and the trial transcripts, the parties made what they referred to as "opening statements." Sheridan Liquors maintained that Mike's federal conviction should not have preclusive effect against it in this case because Adnan, the owner, was never given an opportunity to present a defense in the federal criminal proceeding. Counsel stated that Adnan would seek to introduce evidence that he had a *bona fide* reason for structuring the transactions in amounts under the reporting requirement. Counsel additionally maintained that the indictment provided only that the transactions that were the subject of the federal offense occurred at the bank and not in or about the premises as required under section 3-28 of the Code. He provided the Local Commissioner with a packet of various ordinances and case law to support his arguments.

¶ 11    After responding to Sheridan Liquors' arguments, the City then sought what it called a "directed finding" that Mike, as Sheridan Liquors' agent, violated section 3-28 of the Code based upon the evidence it had presented.[2] The Local Commissioner made an initial finding on the record that "there is a clear violation [of section 3-28] based upon the federal indictment." He later clarified that his finding was based on the federal conviction. Thereafter, the following colloquy took place:

>       "MR. O'DAY [counsel for Sheridan Liquors]: Can we present some evidence about the case, or are we precluded?

>       MR. TURNER [Local Commissioner]: Well, since this is a more relaxed atmosphere, I don't have a problem with you presenting any additional information."

¶ 12    Sheridan Liquors introduced various items of evidence into the record. It offered some insurance policy declarations pages which purported to show relevant business insurance coverage with limits of $10,000 for cash on the premises. It explained the purpose in introducing these policies was to support a defense theory that the reason for structuring the transactions below $10,000 was not to evade the reporting requirements but, instead, because the insurance coverage on the premises was limited to $10,000 cash on hand. Sheridan Liquors requested that the policies be admitted into evidence,[3] and sought a finding that they were not admitted at the federal trial. It additionally introduced a subpoena for Adnan in the federal criminal trial, but explained that Adnan was never called to testify. It also asked the court to take judicial notice of various sections of the Code, and then stated, "that's all I have."

¶ 13    The Local Commissioner allowed Sheridan Liquors the opportunity to make a further record. Sheridan Liquors presented various legal arguments, including that the finding of guilt against the agent should not be binding on the licensee in the revocation proceeding. The City responded to those arguments, and the Local Commissioner addressed those legal arguments.

---

[2]A directed finding is generally made by a defendant at the close of the plaintiff's case where the defendant contends the plaintiff has not established a *prima facie* case. See 735 ILCS 5/2-1110 (West 2010). We will refer to it simply as a finding.

[3]The record reflects that some of the policy declarations pages covered periods outside the time period alleged in the City's notice of hearing and the indictment, and provided coverage limits of only $5,000 inside the premises which was inconsistent with the defense theory.

¶ 14 The parties then presented evidence related to the penalty phase of the proceedings. In support of the revocation of the liquor license as a penalty for the violation, the City presented testimony from a neighbor and several local police officers regarding loitering, litter, and potential drug use around the store. Additionally, the City entered into evidence a 2005 order from the local liquor commissioner, finding that Sheridan Liquors had sold liquor to a minor in violation of section 3-28 of the Code. Counsel for Sheridan Liquors then cross-examined each of the witnesses and entered into evidence letters from the Peoria police department indicating that the establishment had subsequently complied with law enforcement with regard to the sale of alcohol to minors.

¶ 15 In its defense, Sheridan Liquors presented the testimony of Adnan. In response to a question from counsel, Adnan testified that he was familiar with "the insurance declarations pages that we've put into evidence." Adnan stated that he was familiar with the insurance provisions which covered up to $10,000 if money was stolen in a robbery at the store. Adnan further reiterated that he attempted to limit the amount of cash on hand in the store to less than $10,000 for insurance and safety purposes and denied that it was to avoid currency transaction reporting requirements. Adnan acknowledged that the store had a sign indicating that it cashed paychecks and that the liquor store employees would cash checks for its customers in order for the customers to have money to spend in the store.

¶ 16 At the conclusion of the two-and-a-half-hour hearing, the Local Commissioner made the following statement:

"I don't take the City's request for revocation lightly. So what I want to do is I want to review all of the testimony, the exhibits, and the evidence that has been presented here today over the next few days and render a decision that is based on the findings of fact and the information that was presented here today."

¶ 17 Thereafter, the Local Commissioner issued a written order revoking Sheridan Liquors' license. Therein, he made the following findings of fact. Based on the stipulation, Mike was acting as a manager and employee or agent of Sheridan Liquors at all dates and times indicated in the notice of hearing, Mike was found guilty by a jury of committing counts I through V as charged in the federal indictment in the federal case, and the federal criminal offenses for which Mike was convicted all related to the financial and business operations of Sheridan Liquors. Additionally, the Local Commissioner found that, based on the testimony presented during the federal trial, the operation of Sheridan Liquors was "intricate and central to the motive, means and manner in which the federal criminal offenses were committed."

¶ 18 Sheridan Liquors appealed the decision to the Illinois Liquor Control Commission (the Commission), pursuant to section 7-9 of the Liquor Control Act of 1934 (235 ILCS 5/7-9 (West 2010)). After extensive argument by both parties, the Commission affirmed the revocation order and denied Sheridan Liquors' petition for rehearing. The Commission found that the Local Commissioner proceeded in a lawful manner by providing the necessary due process to be heard and by basing his order on section 3-28 of the Code. The Commission further found that the findings of the Local Commissioner were supported by substantial evidence in light of the whole record. Specifically, it found that the stipulation established all of the elements of a violation of the ordinance, and that the federal transcripts confirmed that the premises were central to the criminal activity. Additionally, the Commission found that the conduct was fairly related to the control of liquor, and that the transcripts were properly admitted to identify the location of the illegal act committed by Mike.

¶ 19     Thereafter, Sheridan Liquors filed a complaint for administrative review in the circuit court of Peoria County pursuant to the Administrative Review Law (235 ILCS 5/7-11 (West 2010); 735 ILCS 5/3-101 *et seq*. (West 2010)). Therein, Sheridan Liquors alleged, *inter alia*, that the Local Commissioner violated its right to procedural due process when he summarily determined its liability without allowing it the opportunity to present a defense or be otherwise heard. After a hearing, the circuit court affirmed the decision of the Commission. The court concluded that Sheridan Liquors had been provided with due process, and that there was sufficient competent evidence in the record to support the Commission's decision.

¶ 20     The appellate court affirmed. Although it found that Sheridan Liquors "was not given the opportunity to present its defense in the normal manner, or to cross-examine witnesses," it found that Sheridan Liquors could not show prejudice caused by any lack of due process. 2013 IL App (3d) 110607-U, ¶ 14. It based its determination on the facts that Sheridan Liquors had proper notice, attended the hearing, and entered into a stipulation that the Commission found was sufficient evidence to support the revocation. *Id*. The appellate court further found that the admission of the federal transcripts was not prejudicial error where there was sufficient competent evidence to support the revocation. *Id*. Justice McDade dissented. She would have held that there was insufficient competent evidence to support a finding that the prohibited conduct occurred in or about the premises, it was an abuse of discretion for the Local Commissioner to admit the federal transcripts, and their improper admission resulted in significant prejudice. *Id*. ¶¶ 27-29 (McDade, J., dissenting).

¶ 21     This court allowed Sheridan Liquors' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2013).

¶ 22                                        ANALYSIS

¶ 23     In its brief before this court, Sheridan Liquors raises three issues: (1) the Local Commissioner denied it due process; (2) the Local Commissioner's findings were not supported by substantial evidence; and (3) the Local Commissioner's decision to revoke its license was not supported by the record. As a preliminary matter, Sheridan Liquors concedes that, whether the revocation was an appropriate penalty was an issue not raised below or in its petition for leave to appeal and is therefore forfeited. *People v. Fitzpatrick*, 2013 IL 113449, ¶ 26 (issues not raised in the petition for leave to appeal are forfeited); *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 301 (2006) (arguments not raised in either the circuit or appellate court are forfeited). Additionally, we find that Sheridan Liquors did not raise a sufficiency of the evidence claim in its petition for leave to appeal. Accordingly, that issue is also forfeited. *Fitzpatrick*, 2013 IL 113449, ¶ 26. Therefore, we confine our consideration to the issue of due process, which was preserved for review. To the extent that the sufficiency of the evidence is relevant to Sheridan Liquors' due process contentions, we will consider it in that context.

¶ 24     Pursuant to section 7-11 of the Liquor Control Act (235 ILCS 5/7-11 (West 2010)), decisions of the Commission are subject to judicial review in accordance with the provisions of the Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2010)). Where judicial review of an agency's decision is governed by the Administrative Review Law, "[t]he applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact." *AFM Messenger Service, Inc. v. Department of Employment*

*Security*, 198 Ill. 2d 380, 390 (2001). Whether Sheridan Liquors was provided with the necessary due process is a question of law which this court reviews *de novo*. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004).

¶ 25 The fourteenth amendment prohibits states from depriving a person of life, liberty, or property, without due process of law. U.S. Const., amend. XIV. Initially, we note that although a liquor license is generally regarded as a privilege, and not a property right under the Liquor Control Act (235 ILCS 5/6-1 (West 2010)), once issued, it becomes a property right in a functional sense for due process purposes because it is only revocable for cause. *Club Misty, Inc. v. Laski*, 208 F.3d 615, 619 (7th Cir. 2000); *Lopez v. Illinois Liquor Control Comm'n*, 120 Ill. App. 3d 756, 760 (1983) ("a licensee must be afforded the basic rights of procedural due process").

¶ 26 Due process is "a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). Thus, in administrative matters, due process is satisfied when the party concerned has the "opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute." *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 702 (1994). A fair hearing includes the right to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling on the evidence. *Abrahamson*, 153 Ill. 2d at 95.

¶ 27 Nevertheless, the process due in an administrative setting does not necessarily require a proceeding akin to a judicial proceeding, and not all judicial procedures are appropriate in administrative proceedings. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 433 (1990); *Desai v. Metropolitan Sanitary District of Greater Chicago*, 125 Ill. App. 3d 1031, 1033 (1984). Administrative proceedings are less formal and technical than judicial proceedings. *Id.*

¶ 28 With these principles in mind, we consider Sheridan Liquors' contentions of error. It raises three due process arguments: (1) the Local Commissioner should have allowed it to relitigate Mike's federal criminal conviction; (2) the Local Commissioner made a premature finding on its liability, denying it a meaningful opportunity to refute the City's evidence; and (3) the Local Commissioner improperly admitted the federal transcripts as substantive evidence, prejudicing its ability to defend.

¶ 29                                    Right to Relitigate

¶ 30 We reject Sheridan Liquors' argument that the Local Commissioner denied it due process by not allowing it to relitigate Mike's criminal conviction. Sheridan Liquors misunderstands the nature of its liability in these proceedings. When a licensee accepts the privilege of a liquor license, he impliedly agrees to abide by the provisions of the Liquor Control Act. A liquor license may be revoked where the licensee has violated any valid local ordinance as long as the violation is fairly related to liquor control. 235 ILCS 5/7-5 (West 2010); *Sip & Save Liquors, Inc. v. Daley*, 275 Ill. App. 3d 1009, 1020 (1995) (citing *Lopez*, 120 Ill. App. 3d at 761).

¶ 31 Additionally, section 10-3 of the Liquor Control Act specifically provides:

"Every act or omission of whatsoever nature constituting a violation of any of the provisions of this Act, by any officer, director, manager or other agent or employee of any licensee, shall be deemed and held to be the act of such employer or licensee, and

- 7 -

said employer or licensee shall be punishable in the same manner as if said act or omission had been done or omitted by him personally." 235 ILCS 5/10-3 (West 2010).

¶ 32       Thus, the Act holds the licensee strictly accountable for any conduct of its agent which constitutes a violation of the Act. 235 ILCS 5/10-3 (West 2010). The purpose of holding a licensee to a higher standard is to ensure that the holder of a license for alcoholic beverages has an affirmative responsibility to see that his liquor business is not conducted by its employees in violation of the law. *Nappi v. License Appeal Comm'n*, 50 Ill. App. 3d 329, 330 (1977) (recognizing that the legislature sought to ensure the licensee's accountability for violations of the Act, knowing that a liquor licensee may conduct business through agents and employees).

¶ 33       Illinois case law has consistently applied the Act to hold the licensee strictly accountable for the conduct of its agent where the violation fairly relates to liquor control and is on the licensed premises. See, *e.g.*, *Byrne v. Stern*, 103 Ill. App. 3d 601, 606 (1981) ("the law imposes strict liability upon the licensee for the action or conduct of his agents or employees on the premises regardless of whether the licensee has exercised control over the conduct of his employees or agents"); *Maldonado v. License Appeal Comm'n*, 100 Ill. App. 3d 639, 641 (1981) (licensee accountable for the actions of his employee in performing an act of prostitution on the premises); *Cox v. Daley*, 93 Ill. App. 3d 593, 597 (1981) (licensee was accountable for agent's battery with the use of a deadly weapon upon a patron); *Daley v. Ferguson*, 21 Ill. App. 3d 888 (1974) (abstract of op.) (licensee was responsible for agent's act of allowing solicitation for prostitution on the premises); *Daley v. Resnick*, 5 Ill. App. 3d 683, 684 (1972) (recognizing that the acts of a licensee's agent in violating a statute prohibiting the solicitation for prostitution would be attributable to the licensee); *Daley v. Richardson*, 103 Ill. App. 2d 383, 388 (1968) (licensee was strictly accountable for the assault committed by his employee on the premises).

¶ 34       Here, the City sought to revoke Sheridan Liquors' license based on its agent's violation of a liquor ordinance prohibiting illegal conduct on the premises. Section 3-28 of the Code provides, in relevant part:

> "No licensee or any *** agent or employee of such licensee shall engage in any activity or conduct or suffer or permit any other person to engage in any activity or conduct in or about the licensed premises which is prohibited by any *** law of the *** United States." Peoria Municipal Code § 3-28 (adopted Apr. 20, 1993).

Specifically, the City alleged that Mike, as an agent or employee of Sheridan Liquors, had engaged in illegal activities on the licensed premises between June 2003 and March 2007, by conspiring to structure financial transactions relating to the operation of the premises to evade federal reporting requirements in violation of section 5324(a)(3) of the Money Laundering Control Act (31 U.S.C. § 5324(a)(3) (2006)). Thus, the City sought to hold Sheridan Liquors, the licensee, strictly accountable for the conduct of its agent, Mike.

¶ 35       The parties stipulated that Mike was an agent of the licensee, and stipulated that Mike was found guilty by a jury in the federal criminal proceeding of conspiring to structure the financial transactions to evade the federal reporting requirements. Sheridan Liquors does not dispute that a licensee can be held accountable for the conduct of his agent. Rather, Sheridan Liquors argues that, because it was not a party to the criminal proceeding, it should be able to challenge Mike's conviction in the administrative proceeding.

¶ 36       We disagree. To allow the licensee to relitigate its agent's federal conviction would render the strict accountability provisions of the Act meaningless. As indicated, the licensee stands in

the shoes of his agent. 235 ILCS 5/10-3 (West 2010). Therefore, based on Mike's criminal conviction, Sheridan Liquors could not relitigate the fact that Mike's conduct violated federal law.

¶ 37    That is not to say that Sheridan Liquors' claim, that it had a legitimate reason to structure the financial transactions, was irrelevant. Rather, it was relevant to whether the revocation of the license was an appropriate sanction as a consequence of Mike's conviction. A licensee may always challenge whether revocation is warranted, notwithstanding the conduct of its agent. See, *e.g.*, *Byrne*, 103 Ill. App. 3d at 606-07; *Hanson v. Illinois Liquor Control Comm'n*, 201 Ill. App. 3d 974, 984 (1990). Indeed, Adnan, the owner of Sheridan Liquors, testified in this regard during the penalty phase of the hearing. He testified that he had a legitimate business reason for structuring the transactions under the reporting requirements, and that he directed his employees to maintain less than $10,000 on the premises because of coverage limitations in his business insurance policies and for safety reasons.

¶ 38    Not only was that evidence presented to the Local Commissioner for consideration, the Commission was mandated to consider the whole record which included the testimony of Adnan and the group insurance exhibits that were made part of the record in support of his testimony in mitigation.[4] See 235 ILCS 5/7-9 (West 2010). There is no indication that the Local Commissioner or the Commission failed to consider that evidence for its proper purpose as mitigation. The Local Commissioner affirmatively stated on the record that he was going to "review all of the testimony, the exhibits, and the evidence that has been presented" prior to rendering his decision whether to revoke the license. Accordingly, we reject Sheridan Liquors' argument that due process required that it be allowed to relitigate Mike's federal criminal conviction in the revocation proceeding.

¶ 39                                                     Premature Finding

¶ 40    We next consider Sheridan Liquors' argument that the Local Commissioner entered a premature finding, after opening statements, that it violated the liquor ordinance, denying it a meaningful opportunity to refute and test the City's evidence. Sheridan Liquors correctly asserts that Mike's conviction alone does not satisfy the necessary elements to support its liability for a violation of section 3-28 of the Code. To prove a violation of section 3-28, the City had to establish (1) an agency relationship; (2) that the agent committed a violation of federal law; and (3) that the conduct occurred in or about the licensed premises. See Peoria Municipal Code § 3-28 (adopted Apr. 20, 1993).

¶ 41    The record established that prior to any finding on its liability, Sheridan Liquors stipulated to the agency relationship, stipulated that Mike was convicted of the federal offenses as charged in the indictment, stipulated that the offenses for which Mike was convicted all related to the financial and business operations of Sheridan Liquors, and stipulated that the business operations included check cashing on the premises.

¶ 42    In *People v. Woods*, 214 Ill. 2d 455 (2005), this court explained the nature and effect of a stipulation. A stipulation is "an agreement between parties or their attorneys with respect to an issue before the [tribunal]." *Id.* at 468. They are looked upon favorably because they promote the disposition of cases, simplify the issues, and save expense to the parties. *Id.* " 'A stipulation

_____
[4]We note that in its own pretrial memorandum before the Commission, Sheridan Liquors indicated that the insurance policies were admitted into evidence.

is conclusive as to all matters necessarily included in it' [citation] and '[n]o proof of stipulated facts is necessary, since the stipulation is substituted for proof and dispenses with the need for evidence' [citation]." *Id.* at 469. "Generally speaking, a [party] is precluded from attacking or otherwise contradicting any facts to which he or she stipulated." *Id.* Thus, based on the stipulation, Sheridan Liquors was precluded from attacking or otherwise contradicting the fact of an agency relationship and, as explained, was precluded from attacking the federal conviction.

¶ 43    With respect to whether the conduct occurred in or about the premises, Sheridan Liquors indeed had an opportunity to refute the City's evidence on this element prior to any finding by the Local Commissioner. Although Sheridan Liquors characterizes its statements as merely an "opening statement," we note that the statement was made after evidence was admitted by its stipulation. Additionally, during Sheridan Liquors' "opening," it made various legal arguments and introduced case law and other authority. Notably, Sheridan Liquors argued that section 3-1 of the Code defines premises to mean the area within a building for which a license to sell alcoholic liquor is issued. Peoria Municipal Code § 3-1 (adopted Apr. 20, 1993). Sheridan Liquors further argued that the evidence presented by the City, namely the indictment, indicated that the transactions relating to the conviction occurred at a bank. Specifically, counsel made the following argument:

> "And in the case of this federal indictment, which is part of the stipulation here, you know, that's already been entered without our objection by the City into evidence, if you turn to, for example, Page 4 of the indictment, which is attached to the stipulation. They say that these transactions occurred at National City Bank's facilities in or near Peoria, Illinois. These would be the transactions that were the subject of the federal indictment that were supposedly structured improperly to be less than $10,000 at a time.

> And the premises of a bank of a liquor licensee would not be included within the definition of premises in the city ordinance. Thus, when Section 3-28 refers to premises, that would not include any conduct that occurs at a bank as opposed to on the licensed premises themselves."

Thus, the record reflects that prior to any finding that Sheridan Liquors violated the ordinance, it had a meaningful opportunity to test, explain, and refute the City's evidence by arguing that the definition of premises in the Code did not include a bank, and by relying on the indictment as evidence to support its position that the City did not meet its burden of proof to show that the conspiracy occurred in or about the licensed premises. Therefore, we reject Sheridan Liquors' contention that a premature finding was made, denying it an opportunity to refute the City's evidence.

¶ 44                                 Federal Transcripts

¶ 45    Finally, we consider Sheridan Liquors' argument that it was denied due process when the Local Commissioner admitted the federal transcripts as substantive evidence. Sheridan Liquors maintains that the testimony was inadmissible hearsay that was prejudicial because it represented the only proof that the offenses occurred in or about the premises, and Sheridan Liquors had no opportunity to cross-examine those witnesses.

¶ 46    Generally, procedural due process protections preclude the admission of hearsay evidence in an administrative proceeding. *Abrahamson*, 153 Ill. 2d at 94; *Sudzus v. Department of*

*Employment Security*, 393 Ill. App. 3d 814, 828 (2009). However, " 'where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceeding is not prejudicial error.' " *Abrahamson*, 153 Ill. 2d at 94 (quoting *Goranson v. Department of Registration & Education*, 92 Ill. App. 3d 496, 501 (1980)); *Sudzus*, 393 Ill. App. 3d at 828.

¶ 47    We agree with Sheridan Liquors that the City improperly sought to admit the entire transcript of proceedings from the federal trial, without identifying the purpose for which it sought to use the testimony, and without identifying what specific testimony it sought to rely upon. The Local Commissioner could not properly consider whether the City had established an adequate basis for admission of this evidence. Nevertheless, we need not consider whether the testimony was inadmissible hearsay where there was sufficient competent evidence to support the administrative decision.

¶ 48    The Commission had before it the stipulation, the attached indictment, and the testimony of Adnan. As explained, the stipulation established that Mike was an agent of Sheridan Liquors, and that he had been found guilty by a jury of conspiring to structure financial transactions to evade the federal reporting requirements. Although the stipulation and attached indictment did not expressly state that the illegal conduct occurred on the premises, the Commission was entitled to draw reasonable inferences from the facts established. See, *e.g.*, *People v. Reynolds*, 358 Ill. App. 3d 286, 298 (2005) (finding that the stipulation supported a reasonable inference of criminal intent).

¶ 49    The stipulation provided that the conduct for which Mike was convicted related to the business operations of Sheridan Liquors located at 2415 North Sheridan Road in Peoria, Illinois. The stipulation and attached indictment further provided that the business operations included check cashing on the premises. The check cashing operation on the premises was the impetus for requiring large amounts of cash which resulted in the need to structure the cash withdrawals to evade the reporting requirements. Additionally, Adnan testified that the purpose of the check cashing services at the liquor store was specifically to bring people into the store to promote the purchase of liquor.

¶ 50    Taking all of this competent evidence together, a reasonable and logical inference could be made that the conspiracy to structure the transactions to evade the federal reporting requirements occurred "in or about the licensed premises." Therefore, the admission of the transcripts was not prejudicial error warranting reversal.

¶ 51                                                    CONCLUSION

¶ 52    Based upon our consideration of the whole record, including the 148-page transcript of the two-and-one-half-hour hearing before the Local Commissioner, we hold that Sheridan Liquors was not denied due process. It had an opportunity to present relevant evidence and relevant defenses. Procedural due process does not guarantee an outcome, it only guarantees a meaningful opportunity to be heard. Sheridan Liquors had a thorough opportunity to be heard at every stage of the proceedings. Consequently, we affirm the decision of the Commission.

¶ 53    Affirmed.