2016 IL App (1st) 150442

SIXTH DIVISION
April 8, 2016

No. 1-15-0442

| | | |
|---|---|---|
| JAY F. SHACHTER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, | ) | No. 13 M1 450000 |
| THE DEPARTMENT OF ADMINISTRATIVE | ) | |
| HEARINGS, and THE DEPARTMENT OF | ) | |
| STREETS AND SANITATION, | ) | Honorable |
| | ) | Pamela Hughes Gillespie, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Hall and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-appellant, Jay F. Shachter, brought the instant action against defendants-appellees, the City of Chicago (City), the City's Department of Administrative Hearings (DOAH), and the City's Department of Streets and Sanitation (Department). Plaintiff sought administrative review of a finding by an administrative law officer (ALO) that he had violated section 7-28-120(a) of the Chicago Municipal Code (Chicago Municipal Code § 7-28-120(a) (amended Nov. 16, 2011)) (weed ordinance), for having weeds greater than 10-inches tall on his property. The circuit court affirmed the ALO's finding that plaintiff violated the weed ordinance, and also dismissed the claims in plaintiff's second amended complaint seeking declarations that the weed ordinance and the administrative proceedings were invalid. We confirm the decision of the ALO, and affirm the judgment of the circuit court.

¶ 2                                I. BACKGROUND

¶ 3    On September 12, 2012, the Department mailed plaintiff an "ADMINISTRATIVE NOTICE OF ORDINANCE VIOLATION" (notice) to his residence, located at 6424 North

Whipple Street in Chicago (property). The notice asserted that, on May 31, 2012, an employee of the Department (badge number 626) inspected the property and discovered that weeds "greater than 10 inches in height" were growing on the property in violation of the weed ordinance. The notice informed plaintiff that an administrative hearing on the violation would be held on October 2, 2012. Plaintiff was instructed to "bring all relevant evidence and ensure that necessary witnesses are present at your hearing." He was further instructed to notify the Department by phone if he was not the owner of the property and to contact the DOAH with any questions about the administrative proceedings.

¶ 4    On October 2, 2012, plaintiff failed to appear at the scheduled hearing, and a default finding of liability was entered against him. On November 27, 2012, plaintiff appeared before the ALO with two witnesses. The ALO granted plaintiff's motion to vacate the default finding of liability and commenced a hearing on the notice.

¶ 5    However, before evidence was presented, plaintiff presented a written motion to recuse the ALO on the ground that, as an employee of the DOAH, the ALO had a pecuniary interest in the outcome of the hearing. The ALO denied the motion and stated that he did not work for the City and was not an employee of the DOAH, but was "an attorney that is hired as an independent contractor to preside over these hearings."

¶ 6    The Department then presented into evidence the notice, wherein the inspector, badge number 626, certified that an inspection of the property showed weeds more than 10 inches tall were growing on the property in violation of the weed ordinance, and that photographs attached to the administrative complaint "truly and accurately depict[ed]" the property at the time of the inspection: May 31, 2012, at 9:08 a.m. Additionally, the Department presented as evidence the 10 photographs which had been attached to the administrative complaint, and a deed which

showed plaintiff as the owner of the property. The ALO admitted the photographs into evidence over plaintiff's objection that one of the photographs depicted the parkway and not the property and, therefore, was irrelevant. The photographs showed the condition of the property from different perspectives, and one picture showed a sign attached to a building on the property showing the street number "6424." On the basis of this evidence, the ALO found the notice was proper and that the Department had established a *prima facie* case as to plaintiff's violation of the weed ordinance.

¶ 7    The ALO then provided plaintiff an opportunity to respond. Plaintiff first presented a written motion to continue the hearing on the ground that he had not previously seen any of the Department's evidence and, therefore, he was deprived of due process. In presenting his motion, plaintiff stated that he had brought two witnesses and was "obviously prepared to argue my case today." The ALO denied the motion to continue stating that plaintiff had "familiarity with the process" based on past charges and that both sides were prepared "to proceed."

¶ 8    Plaintiff presented as evidence a copy of the rules and regulations of the Department which defines "weeds" for the purposes of the weed ordinance as "vegetation that is not managed or maintained" by the owner or person who controls the premises and "which, on average, exceeds ten inches in height." City of Chicago Department of Streets and Sanitation & Department of Environments, Rules and Regulations for Weed Control § 2.0 (eff. May 28, 2008). Plaintiff posited that, to defeat the charge of violating the weed ordinance based on this definition, he need only establish that the vegetation on his property was managed or maintained.

¶ 9    As to the condition of his property, plaintiff testified that the plants on his property were not weeds because he "assiduously and scrupulously" manages and maintains them. He said that "all the plants on my property are growing exactly where I want them to grow" and were the

types of plants he wished to grow on his property. Plaintiff also asserted that the Department's photographs actually show he did maintain his property because there was no trash depicted in the photographs. Plaintiff believed the property was "the best tended property on my block" in that there was trash on the lawns of other properties.

¶ 10    Plaintiff presented as witnesses, Dwanye Esslick, who lives across the street from the property, and Anthony Evans, who lives on the property.  Both witnesses testified that plaintiff tended and maintained his plants, there was no garbage on the property, and plaintiff tied the plants on the property so that the sidewalk was kept free of obstruction.  Mr. Esslick described plaintiff as a "kind of naturalist."  Mr. Esslick said some of the plants "look more like wildflowers" and that he would not "personally call them a weed."  Mr. Esslick thought the property, at the time of the hearing, looked similar to the condition depicted in the Department's photographs.  On cross examination, Mr. Esslick admitted that he had not seen plaintiff doing any planting on the property or mowing his lawn.

¶ 11    Mr. Evans testified that plaintiff "tended" the property in spring 2012, but that the Department's photographs "aren't very good."  On cross examination, he said he could not recall if plaintiff tended the property on May 31, 2012.  On redirect, he stated that in spring 2012, he did not "see" plaintiff tending the property, but he knew that plaintiff "had done it."

¶ 12    During his examination of Mr. Evans, plaintiff asked about Bob Lee, who also lives on the property, but was unavailable to testify at the hearing.  The ALO sustained the Department's hearsay objection to plaintiff's attempt to elicit from Mr. Evans the nature of Mr. Lee's testimony had he been called as a witness.  Plaintiff later sought to introduce a purported tape recording of Mr. Lee's potential testimony.  The ALO sustained the Department's objection to the introduction

of the tape finding it was not authenticated. The ALO suggested that plaintiff could have presented an affidavit from Mr. Lee.

¶ 13    After hearing closing arguments, the ALO found that the Department's photographs established that the property "clearly had weeds that were in violation of the ordinance" and plaintiff had not sufficiently rebutted that evidence as to the condition of the property on May 31, 2012. The ALO thus entered an order finding the Department had established, by a preponderance of the evidence, that plaintiff had violated the weed ordinance on May 31, 2012, and imposed a fine of $1,200 plus $60 in costs, against plaintiff.

¶ 14    Plaintiff, on January 2, 2013, filed a five-count complaint in the circuit court against the City, the Department, and the DOAH seeking administrative review of the ALO's decision (count I), and declaratory judgments that the weed ordinance is invalid (count II), the administrative proceeding was invalid because plaintiff first saw the Department's evidence on the day of trial (count III), the ALO prohibited the introduction of hearsay evidence (count IV), and the ALO was unfit to hear these matters (count V). Defendants filed an appearance on January 17, 2013, and a certified record of the administrative proceedings on August 8, 2013.

¶ 15    Plaintiff filed a specification of errors contending, in relevant part, that: (1) his due process rights were violated because he was not given an opportunity to review the evidence against him before the administrative hearing; (2) the ALO wrongly found the relevant question was whether the plants on the property on the date of the inspection violated the weed ordinance; (3) the ALO should have allowed his hearsay evidence; (4) the ALO should have recused himself because he was employed by the DOAH; (5) plaintiff's due process rights were violated because he was not afforded time to prepare his defense and was denied a continuance; and (6)

the evidence did not support a finding of liability because plaintiff presented evidence that he maintained the vegetation on his property.

¶ 16    Defendants moved to dismiss plaintiff's declaratory judgment claims (counts II through V) pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)).  The circuit court, on March 10, 2014, dismissed count V with prejudice; the remaining counts were dismissed without prejudice.  Plaintiff was granted leave to file an amended complaint.

¶ 17    In a four-count amended complaint, plaintiff sought administrative review of the ALO's findings (count I) and declarations that the weed ordinance is invalid (count II), the administrative proceeding was invalid because his due process rights were denied (count III) and the ALO improperly excluded his hearsay evidence (count IV).

¶ 18    The City moved to dismiss counts II through IV of the amended complaint pursuant to section 2-619 of the Code.  735 ILCS 5/2-619 (West 2014).  The City argued that plaintiff was precluded from relitigating the validity of the weed ordinance in count II under the principles of *res judicata* in light of this court's decision in *Shachter v. City of Chicago*, 2011 IL App (1st) 103582 (*Shachter I*).  Defendants also argued that counts II, III, and IV were improper attacks on the administrative proceedings.  The circuit court granted the motion to dismiss the declaratory counts II through IV, with prejudice.  On January 23, 2015, the circuit court affirmed the ALO's finding that plaintiff violated the weed ordinance (count I), and denied plaintiff's motion to reconsider the dismissal with prejudice of count II.  This appeal followed.

¶ 19                                II. ANALYSIS

¶ 20　On appeal, plaintiff raises a number of challenges to the administrative proceedings and asks us to reverse the ALO's decision, and he also asks us to find the weed ordinance is invalid. We address each of plaintiff's arguments in turn.

¶ 21　We review the final decision of the ALO under the Illinois Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014), pursuant to the Illinois Municipal Code (65 ILCS 5/1-2.1-7 (West 2014)), and the municipal code (Chicago Municipal Code § 2-14-102 (added Apr. 29, 1998)).　Judicial review of an administrative decision "shall extend to all questions of law and fact presented by the entire record before the court.　*** The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct."　735 ILCS 5/3-110 (West 2014).

¶ 22　The standard of review depends on the question which is presented.　*Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532-33 (2006).　Determinations of questions of fact "will be reversed only if against the manifest weight of the evidence."　*Id.* at 532.　We review a question of law under a *de novo* standard, and a mixed question of law and fact is subjected to a clearly erroneous standard.　*Id.*　Under any of the standards of review, the plaintiff seeking administrative review bears the burden of proof.　*Id.* at 532-33.　We review the decision of the administrative agency and not the decision of the circuit court.　*Id.* at 531.

¶ 23　Plaintiff was alleged to have violated the weed ordinance on May 31, 2012.　That ordinance provides: "All weeds which have not been cut or otherwise controlled, and which exceed an average height of ten inches, are hereby declared to be a public nuisance."　Chicago Municipal Code § 7-28-120(b) (amended Nov. 16, 2011).　The weed ordinance further provides: "Any person who owns or controls property within the city must cut or otherwise control all weeds on such property so that the average height of such weeds does not exceed ten inches."

Chicago Municipal Code § 7-28-120(a) (amended Nov. 16, 2011). A violation of the weed ordinance need only be established by a preponderance of the evidence (Chicago Municipal Code § 2-14-076(i) (amended Apr. 29, 1998)), and "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (735 ILCS 5/3-110 (West 2014)). We review these findings to determine if they are against the manifest weight of the evidence. *Marconi*, 225 Ill. 2d at 534. A finding is against the manifest weight of the evidence "only if the opposite conclusion is clearly evident." (Internal quotation marks omitted.) *Id.*

¶ 24 In support of the assertion that plaintiff had violated the weed ordinance, the Department presented the notice and photos of plaintiff's property at the administrative hearing which were admitted into evidence. The notice included the inspector's certification that the condition of the property on May 31, 2012, violated the weed ordinance, there were weeds on the property, and that those weeds were "greater than 10 inches in height." The inspector in the notice also certified that the photographs which were admitted into evidence accurately depicted the condition of the property at the time of the inspection. The notice was "prima facie evidence of the correctness of the facts specified therein." Chicago Municipal Code § 2-14-076(i) (amended Apr. 29, 1998). The nine photographs of plaintiff's property depicted a variety of vegetation, many of which were obviously over 10 inches in height. Additionally, the deed established plaintiff's ownership of the property. The notice and the photographs presented at the hearing thus provided sufficient evidentiary support for the ALO's finding that, on May 31, 2012, plaintiff violated the weed ordinance.

¶ 25 Plaintiff's various contentions at the hearing were insufficient to undermine the Department's evidence and the ALO's finding of a violation of the weed ordinance. The ALO

did not err in focusing the inquiry on the date of the violation—May 31, 2012—contained in the notice, as this was the relevant date. Plaintiff and his witnesses did not challenge the accuracy of the Department's photographs depicting weeds in excess of 10 inches on the property on that date. Plaintiff's testimony, and that of his witnesses, that plaintiff maintained the property, liked the vegetation which grew on the property, and kept the sidewalks unobstructed, thus does not refute the evidence that on May 31, 2012, there were weeds in excess of 10 inches on the property.

¶ 26    Nevertheless, plaintiff argues the administrative proceedings violated his due process rights because: (1) his motion for recusal was never ruled upon, (2) he had no opportunity to review the Department's evidence prior to the hearing; (2) during that hearing, the ALO improperly denied his request for a continuance on this basis; and (3) the ALO prevented him from presenting hearsay evidence.

¶ 27    "Due process requires a fair trial before a fair tribunal and applies to both courts and administrative agencies performing adjudicatory functions." *Dombrowski v. City of Chicago*, 363 Ill. App. 3d 420, 426 (2005) (citing *Arvia v. Madigan*, 209 Ill. 2d 520, 540 (2004)). The question of whether an administrative hearing complied with the requirements of due process is one of law and is reviewed *de novo*. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 824 (2009). A court will find a due process violation only where there has been a showing of prejudice. *Gonzalez v. Pollution Control Board*, 2011 IL App (1st) 093021, ¶ 42.

¶ 28    First, we reject plaintiff's argument that the ALO improperly refused to even consider or rule upon plaintiff's motion to recuse the ALO "on the grounds that there is no motion practice in the Chicago Department of Administrative Hearings." The administrative record belies this argument.

¶ 29 Specifically, the record reflects that the ALO entered plaintiff's motion into the record and allowed both plaintiff and the City to make oral arguments with respect to that motion. It is true that the City argued that the motion should be denied because administrative proceedings were "not conducive to motion practice," and the ALO indicated that it agreed with the city on that point. However, the record also clearly reflects that the ALO made clear that it did not agree with the merits of plaintiff's recusal motion and repeatedly indicated that plaintiff's motion had been "denied." Thus, plaintiff's argument that the ALO never ruled upon the recusal motion is unfounded.

¶ 30 Second, we address plaintiff's due process argument as to the introduction of the Department's evidence. The evidence against plaintiff consisted of the notice and photographs relating to the condition of the property and the deed. As to the deed, there was no prejudice. Plaintiff has never contested ownership of the property and, in fact, presented evidence at the hearing, including his own testimony, confirming that he controls the property. The notice itself was served on plaintiff and he admitted to receiving it. Thus, plaintiff was fully aware of the notice prior to the hearing. The notice informed plaintiff of the May 31, 2012, inspection of the property, the inspector's determination that there were weeds on the property taller than 10 inches in violation of the weed ordinance, and that photographs were taken during the inspection. The notice further notified plaintiff that the inspector had certified to the accuracy of the photographs and that the photographs were attached to the original complaint filed at the DOAH. Thus, plaintiff was informed of the existence and nature of the photographs, the inspector's certification of the accuracy of the photographs, and where the photographs could be found. After service of the notice, plaintiff had over two months to prepare for the hearing and seek to review the photographs to prepare his defense, photos that notably depicted plaintiff's own

property. Plaintiff has not established prejudice as to the introduction of this evidence. We find no due process violation as to the admission of the notice, photographs, and deed into evidence.

¶ 31 As to plaintiff's due process challenge regarding the ALO's denial of a continuance, that decision was within the discretion of the ALO. An administrative officer's " 'decision regarding the conduct of its hearing and the admission of evidence is governed by an abuse of discretion standard and is subject to reversal only if there is demonstrable prejudice to the complaining party.' " *Shachter I*, 2011 IL App (1st) 103582, ¶ 52 (quoting *Matos v. Cook County Sheriff's Merit Board*, 401 Ill. App. 3d 536, 541 (2010)).

¶ 32 Plaintiff's motion for continuance, made after the Department's presentation of its case, was based on plaintiff's contention that he had not previously seen the evidence which had been presented against him. We find no abuse of discretion in the ALO's denial of the motion for continuance of the hearing, particularly when plaintiff: (1) was on notice to bring his evidence and witnesses to the hearing; (2) admitted that he was prepared to present his case and had two witnesses present for the hearing; (3) had already failed to appear at the initial hearing; and (4) was aware of the notice and existence of the photographs prior to the hearing. Moreover, the City argued, in opposition to the motion for continuance, that because plaintiff had been charged on multiple occasions with violating the weed ordinance, and had participated in multiple administrative hearings, he was aware of the type of evidence which would be produced against him. The ALO, in denying the motion to continue, recognized that plaintiff's familiarity with the process undermined his claims of surprise and inability to prepare a defense.

¶ 33 Finally, plaintiff argues that his due process rights were violated when the ALO prohibited him from eliciting testimony from Mr. Evans as to the nature of Bob Lee's potential

testimony if he was available to testify and from introducing a purported recording of Mr. Lee. We do not agree.

¶ 34    Before addressing this issue, we note that plaintiff did not inform the ALO of the unavailability of Mr. Lee at the outset of the hearing.  Further, in seeking a continuance of the hearing after the City presented its evidence, plaintiff did not mention the witness was unavailable to testify on that date.

¶ 35    The formal rules of evidence do not apply in an adjudicatory hearing before the DOAH. See 65 ILCS 5/1-2.1-6 (West 2014).  In a municipality setting such as this, "[e]vidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs."  *Id*.; Chicago Municipal Code § 2-14-076(h) (amended Apr. 29, 1998); *Shachter I,* 2011 IL App (1st) 103582, ¶ 71.  Compare *WISAM 1, Inc. v. Illinois Liquor Control Comm'n*, 2014 IL 116173, ¶ 46 (where our supreme court recognized that, in a nonmunicipal setting, due process generally precludes admission of hearsay in an administrative hearing).  An evidentiary ruling by an ALO is reviewed for an abuse of discretion. *Aich v. City of Chicago*, 2013 IL App (1st) 120987, ¶ 12.

¶ 36    First, testimony from Mr. Evans as to what he believed Bob Lee's testimony would be if he had been available does not have the earmarks of reasonable reliability. Further, a tape recording of Mr. Lee's purported testimony, which had no foundation and no authentication and was not subject to an adversarial process, also lacked reliability.  Plaintiff had other means to present Mr. Lee's testimony.  The municipal code authorizes an ALO to permit the introduction of testimony, by affidavit or telephone under certain circumstances.  Chicago Municipal Code § 2-14-076(g) (amended Apr. 29, 1998).  We find the ALO did not err in excluding this hearsay evidence.

¶ 37    Further, plaintiff has not shown that the excluded evidence prejudiced his defense. Plaintiff and his two witnesses testified extensively as to the condition of the property. Plaintiff did not establish that Mr. Lee's excluded evidence would have been anything but cumulative. See *Holston v. Sisters of the Third Order of St. Francis*, 165 Ill. 2d 150, 170 (1995) (exclusion of cumulative evidence, even if improper, is harmless error). See also 735 ILCS 5/3-111(b) (West 2014) ("Technical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him or her.").

¶ 38    In sum, we conclude that the evidence sufficiently supported the ALO's decision finding plaintiff violated the weed ordinance on the date of the charge and find plaintiff's due process rights were not violated during the administrative proceedings.

¶ 39    Next, plaintiff maintains that the circuit court erred in dismissing count II of his amended complaint because the weed ordinance is preempted by state law and is, therefore, invalid. Specifically, he argues that the fine schedule of the weed ordinance, which allows a maximum fine of $1,200, exceeds and is therefore preempted by the $750 maximum fine allowed under section 1-2-1 of the Illinois Municipal Code. See 65 ILCS 5/1-2-1 (West 2014) (authorizing municipalities to "pass all ordinances and make all rules and regulations proper or necessary, to carry into effect the powers granted" them, including the imposition of "such fines or penalties as may be deemed proper," with the proviso that "[n]o fine or penalty *** shall exceed $750 ***"). We disagree.

¶ 40    The weed ordinance was adopted by the City, which is a home rule unit of local government. Ill. Const. 1970, art. VII, § 6(a); *City of Chicago v. Roman*, 184 Ill. 2d 504, 512

- 13 -

(1998). "Home rule is based on the assumption that municipalities should be allowed to address problems with solutions tailored to their local needs." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 29. As such, article VII, section 6(a), of the Illinois Constitution provides that "[e]xcept as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). "Section 6(a) was written with the intention to give home rule units the broadest powers possible." *Palm*, 2013 IL 110505, ¶ 30 (citing *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992)). Furthermore, the constitution itself expressly provides that the "'[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

¶ 41 Under article VII, section 6(h), however, the General Assembly "may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h). "If the legislature does not expressly limit or deny home rule authority, a municipal ordinance and a state statute may operate concurrently as provided in article VII, section 6(i): 'Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive.' " *Palm*, 2013 IL 110505, ¶ 31 (quoting Ill. Const. 1970, art. VII, § 6(i)). However, "[i]f the legislature intends to limit or deny the exercise of home rule powers, the statute must contain an express statement to that effect." *Id*. See also *Midwest Gaming & Entertainment, LLC v. County of Cook*, 2015 IL App (1st) 142786, ¶ 72 ("Our constitution requires specificity when denying a home rule unit the use of its powers."). This requirement

for specificity has been codified in section 7 of the Statute on Statutes (5 ILCS 70/7 (West 2014)), which provides that "[n]o law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of section 6 of article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit."

¶ 42    Plaintiff first contends that, because section 1-2-1 of the Illinois Municipal Code refers generally to "municipalities" without reference to home rule or nonhome rule municipalities, it applies to and preempts the contrary language contained in the weed ordinance, an ordinance passed by a home-rule entity.  We agree with defendants that "[t]his gets it exactly backwards." As discussed above, any preemption of home rule power requires specific, express statement to that effect.  No such specific, express statement is contained in section 1-2-1 of the Illinois Municipal Code, and it has long been recognized that home rule units of government may impose fines greater than a statutory maximum.  *City of Springfield v. Ushman*, 71 Ill. App. 3d 112, 117 (1979).

¶ 43    Indeed, the authority of a home rule municipality to impose administrative fines greater than the amount provided for in section 1-2-1 is clearly reflected in the language of the Illinois Municipal Code.  Section 1-2.2-1 of the Illinois Municipal Code applies to nonhome rule municipalities (65 ILCS 5/1-2.2-1 (West 2014)), and specifically provides that with respect to findings of an ordinance violation, "[a] monetary sanction for a violation *** shall not exceed the amount provided for in Section 1-2-1 of this Act" (65 ILCS 5/1-2.2-45 (West 2014)).  In contrast, Section 1-2.2-1 of the Illinois Municipal Code applies to home rule municipalities (65 ILCS 5/1-2.1-1 (West 2014)), and expressly allows administrative hearing officers in home rule

municipalities to impose fines of up to $50,000 (65 ILCS 5/1-2.1-4(b)(5) (West 2014)). It is impossible to read these distinctions between the treatment of home rule and nonhome rule municipalities as indicating anything but the legislature's intent that the monetary limit contained in section 1-2-1 does not preempt the power of home rule municipalities.

¶ 44    Nevertheless, plaintiff also contends that because the Illinois Municipal Code represents such a comprehensive legislative scheme with respect to municipalities in Illinois, *any* "statute in the Illinois Municipal Code is meant to preempt municipal authority. It would be absurd to argue otherwise." We again disagree, as this argument ignores the fact that so long as "the legislature does not expressly limit or deny home rule authority, a municipal ordinance and a state statute may operate concurrently." *Palm*, 2013 IL 110505, ¶ 31. It also ignores the fact that our supreme court has rejected such arguments, stating that "[u]nder section 6(i), home rule units may continue to regulate activities even if the state has also regulated those activities." *Id*. ¶ 32. "Comprehensive legislation that conflicts with an ordinance is insufficient to limit or restrict home rule authority." *Id*. ¶ 43.

¶ 45    We further note that the Home Rule Note Act provides that "[e]very bill that denies or limits any power or function of a home rule unit shall have prepared for it before second reading in the house of introduction a brief explanatory note that includes a reliable estimate of the probable impact of the bill on the powers and functions of home rule units." 25 ILCS 75/5 (West 2014). The most recent, relevant amendment to section 1-2-1 of the Illinois Municipal Code was made in 1995, when the maximum permissible municipal fine was increased from $500 to $750. Pub. Act 89-63, § 5 (eff. June 30, 1995) (amending 65 ILCS 5/1-2-1 (West 1994)). The legislative history for this public act reveals that no such explanatory note was prepared for this amendment. I Final Legislative Synopsis and Digest of the 89th Ill. Gen. Assem. (No. 17), at

189-91. Indeed, the Senate debate surrounding this amendment to section 1-2-1 clearly reflects that it was intended to impact only "non-home rule" municipalities. 89th Ill. Gen. Assem., Senate Proceedings, April 24, 1995, at 75-77 (statements of Senator Butler); 89th Ill. Gen. Assem., Senate Proceedings, May 21, 1995, at 71 (statements of Senator Butler).

¶ 46    For all the foregoing reasons, we affirm the dismissal of count II of plaintiff's amended complaint because the weed ordinance is not preempted by state law.

¶ 47    Finally, we note that plaintiff has failed to raise any *specific* argument on appeal as to the circuit court's dismissal of counts III and IV of his amended complaint which sought, respectively, declaratory judgments that the administrative proceedings were invalid because he was shown the evidence against him for the first time at the administrative hearing and because he was not allowed to present hearsay evidence. Rather than specifically seek review of the dismissal of these claims for declaratory judgment, on appeal plaintiff makes these arguments within the context of his unsuccessful challenge to the denial of his claim for administrative review. Plaintiff has therefore forfeited any challenge to the dismissal of the requested relief in counts III and IV. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived.").

¶ 48                        III. CONCLUSION

¶ 49    For the reasons stated, we confirm the decision of the ALO finding plaintiff in violation of the weed ordinance and we affirm the judgment of the circuit court with respect to plaintiff's requests for declaratory relief.

¶ 50    DOAH's decision confirmed; circuit court affirmed.